UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**HARRY COLLINS,**

    **Plaintiff,**

    -vs-                                   Case No. 2:06–cv-365-FtM-DNF

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

**OPINION AND ORDER**[1]

This matter is before the Court on the Plaintiff's complaint (Doc. 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Insurance on November 3, 2002. The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums. For the reasons set forth below, the decision is **REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr."] and is followed by the appropriate page number), and the parties have filed legal memoranda.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 16, 2008. (Doc .# 29).

I.  **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW**

On November 12, 2003, the Plaintiff filed an application for Supplemental Security Insurance alleging an inability to work beginning January 11, 2001[2]. [Tr. 11]. The Plaintiff's claims were denied initially on April 2, 2004, and upon reconsideration on July 21, 2004. [Tr. 11, 382-384, 377-380]. The Plaintiff filed a Request for Hearing and on January 10, 2006, a hearing was held before Administrative Law Judge [ALJ] Elving L. Torres on January 10, 2006. [Tr. 398-424]. ALJ Torres denied benefits on April 21, 2006. [T. 11-18]. The Plaintiff filed a request for review which was denied by the Appeals Council on June 9, 2006. [Tr. 2-5]. The ALJ's decision became the final decision of the Commissioner. Under 42 U.S.C. § 405(g), the Plaintiff requests judicial review of the Commissioner's final decision.[3]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial

---

[2] Given the denial of a prior claim for Disability Insurance Benefits and Supplemental Security Income on January 11, 2001, the ALJ determined that everything prior to January 11, 2001, was covered by the doctrine of res judicata and began the relevant period post January 11, 2001.

[3] This case was originally filed on July 20, 2006. The Commissioner sought a Motion of Remand to supplement the record. This motion was unopposed and Judgment was entered on September 18, 2006. The Appeals Council certified that record had been properly supplemented in a letter dated December 4, 2006. [Tr. 391-397].

gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At Step 1, the ALJ found the Plaintiff had not engaged in substantial gainful activity since January 12, 2001, the beginning of the period adjudicated. At Step 2, the ALJ concluded that the Plaintiff's impairments of "asthma and chronic 15 percent insufficiency compression of L-2 level with spondylosis and bulging but without nucleus pulposus" are "severe" impairments, based upon the requirements in the Regulations. (20 C.F.R. §§ 416.920(c)). [Tr. 17]. The ALJ did not find the Plaintiff's limitations and complete inability to work totally credible. At Step 3, the ALJ found these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The ALJ found the Plaintiff has the residual capacity to perform a wide range of light work. At Step 4 the ALJ determined the Plaintiff was unable to perform his past relevant work as heavy equipment operator and truck driver. [Tr. 17]. At Step 5, with the testimony of a vocational expert and reliance on Medical Vocational Rules 202.14 and 202.15 as a framework for his decision making, the ALJ determined that there are a significant number of jobs in the national economy that the Plaintiff could perform. [Tr. 19]. Vocational Expert, Dr. Steven Simon, testified that a significant number of jobs existed in the Plaintiff's geographical area which the Plaintiff could perform considering his age, education and residual functional capacity. [Tr. 414-423]. Accordingly, the ALJ found the Plaintiff was not disabled.

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.   REVIEW OF FACTS

The Plaintiff was born on January 30, 1951, and was 55 years old at the time of his administrative hearing. [Tr. 16-29, 401]. The Plaintiff has a high school equivalent education [GED] and past relevant work as a recycler, steel fabricator, parts picker, garage mechanic, heavy equipment operator and truck driver. [Tr. 26]. The Plaintiff alleges he is unable to work due to asthma, low back pain and a herniated disc. [Tr. 404-406, 407]. The Plaintiff has been homeless during the relevant time period and has lived in a tent without water or electricity. [Tr. 290-293, 404-405]. The Plaintiff's medical care has primarily been the Charlotte County

Health Department and other hospitals in Charlotte County. The Plaintiff receives his medications through the Compassionate Care Program in Charlotte County. The Plaintiff relies on picking up scrap metal for work but states this activity has been limited by his back problems and related pain and his respiratory problems in the form of asthma.

The Plaintiff was seen by Dr. Kenneth D. Levy, M.D., after he was injured in a truck accident at work in January 1997 (and off and on through September 2000) for back and leg pain. An MRI revealed a disc herniation at L-4-5 that was pressing on the ventral sac. Dr. Levy recommended: "[t]hat the patient returned to work without restriction beyond lifting over 40-50 pounds." Dr. Levy stated that the Plaintiff might "[r]equire future more aggressive measures, including even future surgery." The Plaintiff was prescribed Lortab and Soma (to be used after work) and "[w]ill let him work with a brace". The Plaintiff was advised to return in three weeks. [Tr. 54].

On September 19, 2000, the record shows the Plaintiff was seen by Dr. Levy for lumbar spasm, tenderness at L4-L5 and L5-S1 with radicular pain in his L-5 dermatome. Dr. Levy found no atrophy, no toe extensor weakness and acceptable reflexes in his knee and ankle with good hip motion. Dr. Levy wanted the Plaintiff to proceed with an MRI but was advised the Plaintiff couldn't afford it. Dr. Levy advised the Plaintiff that if she is able to get Medicaid or some type of insurance, that she would need to get it done so that it could be compared to what was previously documented. [Tr. 51].

The Plaintiff was seen by Ebrahim Papan, M.D., on December 19, 2000, for a physical examination. The Plaintiff advised that he was involved in a motor vehicle accident in 1997. At that time, no surgery was performed and the Plaintiff advised he herniated his lumbar vertebra. There are no studies or x-rays because the Plaintiff has no insurance. The Plaintiff complains of constant pain, occasional weariness and numbness in his lower extremities, more on his right side than his left side. He states that if he walks (a long walk or short walk) his legs go numb and then he cannot walk any further. [Tr. 57].

The Plaintiff advised that he was diagnosed with asthma and chronic obstructive pulmonary disease three or four years ago. The Plaintiff states that as a child he was able to handle his asthma but for the past few years his symptoms have gotten worse. The Plaintiff is able to go to the store and recycles things for a living. His last hospitalization was a year ago because of his asthma. The Plaintiff advises that he is now getting severely short of breath and was blue at the time of his admission to the hospital. The Plaintiff is unable to afford medication and uses only over-the counter inhalers. [Tr. 57]. [4]

The Plaintiff admitted to smoking a pack of cigarettes per day and to occasional alcohol use. The Plaintiff also revealed he is homeless and sleeps in a tent. Dr. Papan's CLINICAL IMPRESSION: "1. [L]ower back pain secondary to radiculopathy and nerve impingement. As noted in his orthopedic notes, he needs to have a repeat MRI done to evaluate his current situation. 2. Asthma, which is poorly controlled because of the use of over-the-counter medications. This gentleman needs help with his medical status at this point." [Tr. 57-59].

---

[4] The Plaintiff was instructed to use Atrovent and Albuterol but has been unable to afford to do so for the past six months. [Tr. 57].

The medical records document that the Plaintiff was seen at St. Joseph Hospital on numerous occasions and went to the Family Health Center to get established as a patient in September 2001 and received regular care at the Charlotte County Health Department. [Tr. 164-196). On January 28, 2004, the Plaintiff went to a follow-up appointment at the Health Department. It was noted that he had decreased breath sounds and occasional wheezing. On February 4, 2004, the Plaintiff had a complete physical examination. He was diagnosed with "[a]sthma and arthritis (back)". (Tr. 167-168). On February 25, 2004, the Plaintiff received the results of his lab tests which revealed "[h]yperlipidemia, hepatitis B and C." The Plaintiff was advised to walk 15 minutes twice a day and encouraged to stop smoking. (Tr. 166-167).

On March 22, 2004, the Plaintiff had a consultative examination with Dr. Mark Andrew Highsmith, Ph.D., a psychologist. Dr. Highsmith was asked to perform a psychological examination by the Office of Disability Determinations. [Tr. 12], 138-141]. The Plaintiff's mental status examination revealed a man who "[w]alked slowly with some difficulty." The Plaintiff was oriented and his speech was evaluated as "[f]air to good." The Plaintiff's "[a]ttention, concentration and memory appeared to be fair and within normal limits, along with his reasoning, judgment and insight." The Plaintiff's affect was "[m]ildly depressed although the claimant was able to demonstrate a good sense of humor." The Plaintiff denied any suicidal ideation or intent. "[T]he claimant appears able to manage any funds he may receive." [Tr. 141]. DSM IV-TR Diagnoses: "AXIS 1: [D]ysthymic Disorder, Alcohol and Cannabis abuse, sustained full remission. AXIS II: Antisocial Personality Features, AXIS III; Status Post Head Injury with Loss of Consciousness, Fractured Vertebrae, Herniated Spinal Disc, Chronic

Pain, Asthma, Insomnia Associated with Chronic Pain, Arthritis, by report.  AXIS IV: Occupation Problems, Social Relational Problems, Housing Problems, Problems with Primary Support Group, Problems with Access to Health Care Services. AXIS V: GAF = 55.[5]" [Tr. 141].

Dr. Highsmith's summary revealed that "[t]he claimant is a homeless man who is struggling to survive from day to day.  He is able to work a few partial days each month collecting metals to sell for recycling."  He found the Plaintiff to be "[c]hronically sad."  The Plaintiff did state that his pain medications were only partially effective and he would like to be able to afford his medications through a pain management doctor.  Dr. Highsmith recommended counseling through a social worker to help the Plaintiff resolve family issues and to connect with community resources. [Tr. 141].

The Plaintiff was seen in May of 2004 at the Health Department for congestion and wheezing.  The Plaintiff advised he was using a friend's nebulizer "[b]ecause his nebulizer had nothing "[i]n it".  The Plaintiff was prescribed and received Ibuprofen and Celebrex.  [Tr. 164-165].  The Florida Department of Health in Port Charlotte began treating the Plaintiff in June of 2004 for back problems, asthma problems and medication refills. [Tr. 266-270].  In the beginning of 2005, the Plaintiff was seen for shortness of breath, COPD and bronchitis. [Tr. 262].

---

[5] A GAF score of 55 is consistent with moderate symptoms (e.g. flat effect) or moderate difficulty in social, occupational or school functioning often manifested as conflicts with co-workers. American Psychiatric Association, DSM-IV.

In April 2005, the Plaintiff was seen at the Peace River Regional Medical Center for his shortness of breath. Medical records state: "[Shortness of Breath – History of Asthma/C. No pulmonary infiltrate, mass or effusion. Contour of heart and mediastinum are within normal limits. Probable healed right rib fracture. Degenerative changes involve the thoracic spine." IMPRESSION: "[n]o radiographic acute heart or lung findings.". [Tr. 232]. The May and June 2005 records revealed increasing problems with his lungs, including coughing, wheezing and shortness of breath and black outs. [Tr. 259-261) The Plaintiff returned in July 2005 with shortness of breath and August through October of 2005, the Plaintiff continued to receive care for respiratory problems. The Plaintiff's consistent diagnosis was COPD. [Tr. 259-257].

The Plaintiff was admitted to Peace River Medical Center on November 4, 2005, after he blacked out while walking. He advised that two weeks prior while driving he had also blacked out and found himself in a ditch. [Tr. 238]. The Plaintiff was admitted with syncope, edema of the lower extremities, asthma and right shoulder pain. [Tr. 236]. The Plaintiff was checked for "[c]arotid Doppler as well as echocardiogram". The echocardiocgram showed a "[n]ormal left ventricular function with no wall abnormalities". At the time of discharge, the Plaintiff's Carotid Doppler test was still pending. The patient was released on November 6 th with Vicodin, 1 to 2 tablets as needed, and advised to take 325 mg. of aspirin daily. The patient was discharged in stable condition. [Tr. 236]. The results of the Caroltid Ultrasound revealed: 1. "[U]nremarkable sonographic evaluation of the carotid arteries with no significant aterosclerotic change and no carotid artery stenosis appears. 2. The vertebral arteries are also well visualized and seen with normal antegrade flow". The report was signed by Margo H. Rosa, M.D. [Tr. 271].

### III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW

#### A. THE ALJ FAILED TO PROPERLY EVALUATE ALL THE MEDICAL EVIDENCE

The Plaintiff contends the ALJ failed to properly consider the combined effect of the Plaintiff's severe impairments and non-severe impairments. 20 C.F.R. § 416.923 (the Commissioner will consider the combined effect of all Plaintiff's impairments with regard to whether any such impairment, if considered separately, would be of sufficient severity). The record shows the Plaintiff suffers with asthma/COPD, back problems with pain, shoulder problems with pain (including arthritis), hyper lipidemia, syncope, pedal edema and hepatitis B and C. [Tr. 166, 236, 256].

The Plaintiff conceded that although the ALJ's failed to address his hepatitis B & C - it did not present a problem because these ["appear to be asymptomatic"]. [Pl.'s Brief, Page 16, Paragraph 2]. However, the Plaintiff argues that the ALJ failed to address the Plaintiff's syncope (fainting) and pedal edema (swelling of the feet and ankles) and his shoulder difficulties. The Plaintiff was seen at the Peace River Medical Center for his two episodes of syncope within a two week period. One episode occurred while the Plaintiff was driving and the other while he was walking across the room. [Tr. 238]. The Plaintiff was evaluated for a possible cardiac condition. 'Tr. 239]. The test results did not identify an underlying impairment. [Tr. 236, 243]. The record shows no further episodes of syncope and the Plaintiff testified that he continued to drive at least 10 to 15 miles a day. [Tr. 401]. Further, the record shows only one instance of pedal edema in the record and it appears from the notes written by the physician (name illegible) at the Department of Health that the Plaintiff was prescribed numerous prescriptions for the swelling of his legs. (However, it is not possible to clearly read the names of these prescriptions).

As for the Plaintiff's allegations of shoulder impairment, the ALJ recognized that an MRI had revealed that their was joint effusion and a tear in the Plaintiff's left shoulder in December of 2002. [Tr. 14, 107, 108]. The record shows the Plaintiff went to physical therapy which increased the strength and range of motion and helped decrease the swelling. In January of 2003, the Plaintiff reported that his left shoulder was still "somewhat" sore, yet the Plaintiff was back at work. [Tr. 14, 81] X-rays revealed only mild degenerative changes and there were no fractures or dislocations. In December 2003, an examining physician reported the Plaintiff had normal range of motion of the shoulder bilaterally. The Plaintiff's muscle testing showed good strength; deep tendon reflexes were within normal limits and no pathological reflexes were observed. [Tr. 135].

### B.   THE ALJ ERRED BY FAILING TO FOLLOW THE 11TH CIRCUIT PAIN STANDARD AND CREDIBILITY

The Plaintiff contends the ALJ failed to apply the proper standard for the evaluation of pain and credibility and that the ALJ's RFC determination is contrary to the medical evidence of record.

The Eleventh Circuit pain standard requires (1) evidence of an underlying medical condition and either (2) objective evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. Once the standard is met, the ALJ must still evaluate the intensity and persistence of the symptoms based on all of the evidence of record. 20 C.F.R. 404.1529(c). The ALJ may discredit a claimant's subjective testimony regarding pain if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Determining the credibility of a claimant is the

duty of the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id*.

The medical evidence of record shows the Plaintiff had some back pain and breathing difficulties.[6] The Plaintiff was seen for shortness of breath, reported he had a history of asthma and was observed wheezing bilaterally. A spirometry examination revealed an obstruction. [Tr. 14, 62]. The ALJ failed to discuss this examination or the Plaintiff's episodes of syncope associated with his asthma and COPD.

The Plaintiff's back problems have been documented throughout the record and by accepted diagnostic tests. The record documents the many visits to the ER for back pain, regular appointments with Dr. Levy and discussions of an operative procedure to try and alleviate the Plaintiff's condition. [Tr. 13, 174]. The Plaintiff was to be referred to pain management by Dr. Levy but was unable to continue either with Dr. Levy or go for any further medical treatment due to his finances. [Tr. 183]. The Plaintiff was forced to go to public health care to receive medication for his back pain. The record shows that the Plaintiff's allegations regarding his pain are credible.

The ALJ cited the 2003 medical records of the Plaintiff concerning his successful rotator cuff repair on his left shoulder (which Plaintiff injured while lifting). In 2004 and 2005, the records show the Plaintiff continued to have problems with his shoulder which included pain, reduced range of motion and the development of arthritis in the right shoulder. [Tr. 166, 256].

---

[6] The ALJ did not give probative weight to the medical records dated during the period of time already adjudicated through January 11, 2001.

In 2003, the Plaintiff met with an SSA employee and the two doctors referred by the agency. It was noted that the Plaintiff had difficulty sitting, standing and walking. [Tr. 314]. Dr. Highsmith noted the Plaintiff walked slowly and with difficulty. {Tr. 141]. These opinions are not cited by the ALJ. However, the ALJ determined by his own observation that: ".... [t[he claimant remained sitting during approximately one hour at the hearing without any significant facial gestures or grimaces of pain noted, and no significant difficulty was observed." " .... [t[he claimant walked out of the courtroom with normal gait and no difficulty observed." Tr. 15].

While the ALJ is allowed to observe and consider a Plaintiff's demeanor at the hearing to determine the credibility of a Plaintiff's severity of pain, SSR 96-7 requires an ALJ to consider all of the evidence in the record and "must also consider" the observations of SSA employees during interviews, whether in "[p]erson or by telephone" (SSR-96-7-p). The Plaintiff met with an SSA employee in 2003, was seen by two physicians hired by the agency and all stated that the Plaintiff had difficulty with sitting, standing and walking. [Tr. 314].

The ALJ dismissed the Plaintiff's allegations as to the severity of his pain and incapacitation as "not credible" with regard to the medical evidence, the Plaintiff's own testimony and demeanor at the hearing. {Tr. 14]. The medical records in the instant case clearly demonstrate that the Plaintiff has a medical condition that can cause pain and that he is credible.

## C.  THE ALJ ERRED IN FINDING THE PLAINTIFF CAPABLE OF LIGHT WORK WITH RESTRICTIONS

The Plaintiff was found to be unable to return to his past relevant work, thus the Commissioner bears the burden of proving that there are other jobs that the Plaintiff can perform despite his impairments and that those jobs exist in significant numbers in the national economy. 20 C.F.R. §416.920.

The ALJ determined that the Plaintiff's residual functional capacity consisted of a wide range of light work. The ALJ determined the Plaintiff can occasionally climb, balance, stoop, kneel, crouch and crawl, but should never climb large vertical ladders, ropes or scaffolds, and avoid unprotected heights. The ALJ determined the Plaintiff must avoid concentrated exposure to noxious smoke, dust, fumes, gasses and poorly ventilated areas.

Dr. Steven Simon, the vocational expert at the hearing, determined that based on the Plaintiff's age, education, past relevant work experience and residual functional capacity (light) the Plaintiff would be able to work as an assembler, hand packager, cashier, and chauffeur.

The Plaintiff argues that the ALJ did not accurately reflect all of the Plaintiff's limitations when presenting questions to the vocational expert. The case law of the Eleventh Circuit requires that the questions to the VE be accurate. *Pendley v. Heckler*, 765 F.2d 1561, 1563 (11th Cir. 1985). The ALJ failed to address the Plaintiff's syncope, memory problems, his pedal edema and the fact that the Plaintiff was having respiratory difficulties. The ALJ failed to address the issue that the Plaintiff's medical problems were evidently worsening as time went on. In the last treatment note dated December 15, 2005, the Plaintiff's impairments consisted of shoulder pain, leg pain, depression, disc problems, memory problems and the fact he was in need of an inhaler. The medical record shows that the Plaintiff is unable to work.

## IV.  CONCLUSION

For the foregoing reasons, the ALJ's decision is inconsistent with the requirements of law and not supported by substantial evidence. The ALJ is required to consider the entire record in making his disability decision. In the instant case, the records from 2005 were not fully addressed in the ALJ's decision.

**THEREFORE:**

For the foregoing reasons, the ALJ's decision is inconsistent with the requirements of law and not supported by substantial evidence. Accordingly, the decision of the Commissioner is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g.) for proper consideration of the Plaintiff's medical condition and pain, and if necessary, consultation with a medical expert to determine the Plaintiff's proper onset date and the Clerk of Court is directed to enter judgment and, thereafter, to close the file. .

In Chambers, Fort Myers, Florida, this 18th day of February 2008.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Jonas H. Kushner, Esquire
For Plaintiff

Susan R. Waldron, A.U.S.A.
Commissioner of Social Security

Case 2:06-cv-00365-DNF Document 30 Filed 02/19/08 Page 16 of 16 PageID 120
